United States v. Obando. Thank you, Your Honor. Good morning. May it please the Court. Arun Ravindran, Assistant Federal Public Defender for Mr. Mera. The threshold issue this appeal presents is whether the painted Colombian flag on the Siempre Malgaritas Hall constituted a section 70502E2 claim of It seems hard. To me, it seems there's a pretty big difference between displaying a flag and flying a flag, and I'm having a hard time understanding how painting a flag on the hall could constitute flying a flag within the ordinary meaning of the English language. Well, Your Honor, I believe that was the concern the District Court had, and this is where I propose the District Court got that wrong. The District Court determined that, focused on the word flying within the term flying the flag, and assumed from that that flying had some inherent quality of movement. But, of course, as recognized most recently in King v. Burwell, questions of statutory interpretation turn on phrases and language, not just words. And so I would submit, Your Honor, and we in fact did submit in the District Court, that the phrase flying the flag has a meaning in and of itself, an idiomatic meaning, and I believe that's corroborated by what the Cambridge Idiomatic Dictionary believes and the Oxford Dictionary. Those definitions are at page 31 of our brief. Cambridge defines the term flying the flag as to represent your country. Oxford defines it as to be registered in a particular country. So, Your Honor, that's where I think... So Webster's second would say that fly, the transitive verb fly, would be defined as to cause to fly or to float in the air as a flag. Webster's third defines fly as to float, wave, or soar in the air, and gives as an example a flag that flies from the tall staff. If we look at the Oxford English Dictionary in a section on nautical phrases, it defines to keep the flag flying as to refuse to haul down one's flag and surrender. That all suggests to me that the District Court was right. Well, Your Honor, the District Court, those definitions that you've given of the term flying, Mr. Mehra has no quarrel with. What our issue is, and guided by the Court's decision in Robinson versus Shell, the Supreme Court's decision in Robinson versus Shell, the language must be construed within its statutory context, and that's precisely what Judge Rakoff in the Prado case cited at page 10. He situated that term flying the flag, and the word flying, within the general context of the MDLEA, a statute which does not regulate something like the flight of kites or the flight of birds, where these qualities of movement, loft, lift, might be relevant. What the MDLEA tends to legislate is this fear of comedy, international relations. The language of those fears is about nationality and it's about sovereignty, and flying the flag has a very particular idiomatic explanation within that context. If the idiomatic meaning, as you say, is representing, I'm not sure exactly what the words you use were, but representing nationality or indicating nationality, then it seems to me flying the flag in the statute would completely overlap with the other two ways in which nationality can be asserted. What are the limits of that means? The limits of the term flying the flag? Well, the flying the flag is one way the nationality may be asserted. It is limited, probably, by the practical realities of having been recognized by, in this case, the Coast Guard. What if the vessel said Columbia in big letters on the side? Would that be flying the flag in your definition? In that situation, I don't believe it would. I think that that's one addition, but it's not flying the flag, and the reason is because does Columbia refer to the capital of South Carolina, the country or the university? Well, if it's spelled with an O, it would be the country. Right, yeah, I guess that is true, but what is indisputable in this case is that the Colombian flag that was on the side of the Siemper Margarita was not subject to that type of confusion. Four individuals interdicted that vessel on the Coast Guard boarding team. To a man, each person saw that flag and instantaneously recognized a flag for what it was. Help me go back to the very beginning. Yes, Your Honor. To make where you stated the issue in the case, and help me walk through this to make sure I understand your position. I understand your position is that the master's identification of the flag was irrelevant because the vessel made a claim of Colombian nationality under E-2. Is that your position? That is correct, Your Honor. So why aren't we under E, which talks about vessel without nationality and speaks to the master or individual in which case, how did we even get to E-2? Well, I suppose, Your Honor, because ultimately the master is the one that took to the sea in a vessel which prominently featured the Colombian flag. In one sense, I suppose the master... Your position is we should look at the vessel and whatever flag a vessel, if it's waving, if it's the biggest flag in the world and it's the sea and you're going up the Suez Canal and you fly a flag of Saudi Arabia because you know the pirates won't bother you, it doesn't matter. That's a Saudi Arabian vessel. It's flying the Saudi Arabian flag and it's the vessel that makes the claim. That's your basic position. Right, Your Honor. I said yes when I asked the question. The next question is, why isn't this a vessel without nationality? The master stated that he failed to make a claim of nationality or registry for the vessel. He was very clear about that and you stipulated to that. So why are we even talking about E-2? Well, Your Honor, our stipulation follows based on page 59 of the record. When directly asked... The stipulation, I'll read it to you, just so there's no... two paragraphs you state. Thank you, Your Honor. The master did not make a claim of nationality or registry for the vessel. Then in paragraph 6 of your stipulation you state the master's failure to make a claim of nationality or registration of the vessel. So your position is the vessel. So I'm, you know, I'm really pretty simple. I look at D and it says vessel without nationality. And why aren't we there? I still don't understand your position. It seems that you keep coming back and saying, but the vessel made a claim. It doesn't matter what the master said. The vessel made a claim. That's basically your position, isn't it? I think that's fair to say, Judge, and I would say in response to that there's two points I would make. As to the stipulation, the stipulation talks about the initial encounter with the vessel and the interdiction. And I think it's fair reading of the stipulation to conclude that the master did not make a claim of nationality at that point. But is that speaking to... that stipulation was made only with respect to E3, that is, a verbal claim? So the stipulation was that the master had not made a verbal claim as specified in E3. That's the point of the stipulation. That's our proposal. I think that is the point of the stipulation because it's further evidence is when they directly asked him what is the nationality of this vessel, he said he did not know. However, there are three ways to make a claim of nationality under Section 8. And we So when the master said he did not know, he was really making a claim of nationality? No, Your Honor. When the master said he did not know, he was expressly disavowing any verbal claim of nationality. If he had intended to mislead the Coast Guard, that would have been his opportunity. He could have said this vessel is from country X or country Y. He could have said Ecuador. Instead, he said he didn't... He said nothing. He said nothing. I mean, he could have just said nothing, period. And I believe that's what the stipulation says, that he either said nothing or... Well, the stipulation says he did not know. The district court ultimately found he either said nothing or did not know. He made no claim of nationality. Right. So, Your Honor, that, I believe, is the crux of this issue. And I think that based on the fact that there is a flag, a Colombian flag, it was then incumbent on the Coast Guard in observance of the statutory mechanisms to reach out to Colombia for a statement of non-objection, which it did not do. And I see my time is up. You've saved five minutes for Roberto, Mr. Rivendren. Mr. Cabrera, will you come and speak with us? Oh, I'm sorry, Mr. Colan. Is that right? Colan? Colan, yes, Your Honor. Yeah. Mr. Cabrera, I guess, is sitting with us at the council table. I'm sorry. Good morning. May it please the court, I'm Jonathan Colan on behalf of the United States. The question in this case is can a master of a vessel make a Colombian flag claim when he identified the flag as an Ecuadorian flag? The MDLEA gives the power to the master of the vessel to make a claim or fail to make a claim. When the Coast Guard came on board, he failed to make a claim. So under subsection D2, they made requests about information about the vessel because the statute says that the master fails to make a claim upon request. Let me ask you this question. So let's say the vessel is flying a flag, literally flying a flag on a staff. It's a Colombian flag. The Coast Guard approaches and says what kind of flag is that? And the master says Ecuadorian. Okay. You would say that's not flying a flag. I would say that he has made it at best if he's flying the flag and he says it's Ecuadorian, he has identified that flag as an Ecuadorian flag. Now, what happens in this case, the Colombia and Ecuador's flag are very similar. But let's make a case where we don't even have the similarity question, so there's no ambiguity. Let's say it's plain as day a Canadian flag, an easily identifiable, non-confused flag, and he says that's a Mexican flag. By flying a clear, undistinguishable Canadian flag, he is flying a flag. But by identifying it as a Mexican flag, he's now made two separate contradictory claims. And the statute deals with that. When a person at sea, and the Convention on the High Seas as well, which is incorporated by reference into the statute, tries to make two different claims, that's called a flag of convenience. You're trying to confuse people, like as your Honor said, perhaps you're sailing through Saudi Arabian waters and you want people to think you're a Saudi Arabian. But that's not what happened here, because he didn't make a claim of nationality, Mira. He simply identified a flag incorrectly. Well, there are three ways to make a claim. You can make a verbal claim by saying, this is an Ecuadorian vessel. It's stipulated he did not say, make a verbal claim, this is an Ecuadorian vessel. The government believes that by identifying... Is that all the stipulations about Judge Black was reading it earlier? Or does it mean more? It's our reading of the stipulation, that it was a narration of these events, that when they came on board, he made no claim. Okay. So they inquired... That is only speaking then to the E3 issue? Well, at that point, he's made no claim. So they made, by asking questions, they wanted him to identify which flag claim, if any, he's making. Because as Judge Prado notes in the Rakoff decision, which the appellants rely on, if a master takes no action, makes no attempt to use a small painted flag, he might not even be aware of it. The point, Your Honor, you asked about flying a flag at sea. The traditional point of flying a flag at sea, why flying is an important word in the statute, is it's the whole intention, excuse me, is to be seen at a distance. Ships could be at great distance, you want it elevated so it could be seen as far as possible over the horizon. By making it elevated and visible to the world, that could be imputed to a master. So if he had remained silent, for example, but had an elevated, clear as day flag, no one could say that the master had no relation to this flag. That's an action. You have elevated and raised a flag that is clear to the world. Now it happens that the Coast Guard noticed this flag, unlike the Rakoff decision, I'm sorry, the Prado decision, which Judge Rakoff questioned whether anyone might see it. Here it's undisputed that the Coast Guard individuals saw the flag. The painted flag. But that is, you would not contend that the painted flag complies with E2? No, it's our position that a painted flag alone, if the master takes no action, is not sufficient. Here, though, he did take an action. And whatever was in their mind, however they interpreted the flag, is trumped by his words. The master makes the claim under the statute. I want to go back to Judge Pryor's question, though. Why is the painted flag not sufficient? Because it's not flying in the air? Because Congress has allowed and chose its words. Congress in the statute has described me, there are all kinds of ways one could display a flag and there are all kinds of things one could put on a vessel. One could paint on the back of a vessel, the home port. You could say, Cartagena, Colombia, painted on the back of the, on the boat. But Congress has chosen three, to define three possible ways the master can make a claim. And just telling you, even though this court has talked about looking for other indicia or asking, and the Coast Guard, in the interests of diplomatic comedy, asks about things like home port. But a home port painted on the back would not be a claim. I mean, you can look at the ships here in the Port of Miami. Their home port might be here, but they're not registered here. So Congress chose the word flying a flag. And it's our position that that is what constitutes a claim. But even here, if the master... Painting it on the hull does not satisfy E2, that that does not constitute flying a flag. End of the case. Yes, Your Honor. But even if the point the government wishes to emphasize is even if it did, A, it's trumped by the master's words. Or at best, if the master's words and the painted flag were of equivalent weight, now you've got two contradictory claims and the statute deals with that situation, declaring that a stateless vessel, because they've made multiple contradictory claims. Otherwise, we'd be in a situation in another case, Your Honor, if the Coast Guard, even though they believed it was Colombian, if the Coast Guard's in a position to disregard the master's words, we'd be here in another case, where the appellants would be screaming bloody murder, we said Ecuador, and the Coast Guard went and checked with Colombia instead. That's not what the statute provides. The statute says that the Coast Guard, he can make a verbal claim, which he didn't. It stipulated he did not. He did not say this is a Colombian vessel. He could have the documents on board, which he didn't. Which he didn't. And he could make a flag claim. He either could fly unmistakably a Colombian flag, or perhaps the Coast Guard, in good practice, if he had identified it as a Colombian flag claim, even though it's painted on the side, while the painted flag alone might not suffice, if he had said, that's a Colombian flag. That might have satisfied E3. It might have, and certainly in good practice. But it was stipulated that he didn't do that. It was stipulated that he said Ecuador. And he certainly can't, that's, by saying Ecuador, that would not be... I don't know, though, how you, I don't know how, no matter what he said about that painted flag, when he stipulates that he didn't make a verbal claim, I don't know what effect that, the fact that he pointed to the flag, what effect it has, unless that could be viewed as flying the flag. One could argue, in another case, if he'd identified Colombia. In another case. That he's identifying a flag claim. I'm talking about this case. But not this case. Certainly when the master says Ecuador, the Coast Guard cannot be acting, certainly not in bad faith, and not improperly in any way, by taking the master at his word. The master makes a claim, he identified his flag claim, if any, the stipulation is he made a possible flag claim. That's in paragraph seven of the stipulation. So to the extent there was a flag claim, if any, it was Ecuador. Or at best, two contradictory claims, if the painted flag alone sufficed. But that's not the government's position. Unless the court has any further questions. I do have one more question. In your brief, you cite to the First Circuit decision in Nuchi Pena, and in that case, as I understand it, the Coast Guard believed that the master of the vessel had claimed Colombian nationality. And then later, the defendants moved to dismiss, and they said, no, actually, the master made a claim of Venezuelan nationality. And the government introduced a certification from Venezuela to supplement the record. Do you know why anything like that wasn't done here? What the government might do, by running, by checking with multiple countries, perhaps in that case, I can't be in the mind of what was done in that case, the government was trying to make its best diplomatic efforts. But the statute is clear that you cannot make two claims. If you make two claims, you're stateless. So... Well, that was an assertion that there was an erroneous claim. It wasn't two claims. It was a dispute about what the master had actually said. Well, in this case, we're talking about one incident. There at the time, he's got the painted flag, and he identifies it as Ecuadorian. But there's a dispute about whether that was making a claim of nationality in this record. The stipulation is that he did not make a claim of nationality. And that he made a possible flag claim. So the government, taking him at his word, and in the interest of diplomatic comedy, because we want the purpose of all these, of the MDLEA's nationality of the vessel, the entire scheme, as this court has recognized, is diplomatic comedy to make sure we're not stepping on the prior interests of another country who may have an interest in this vessel. But here you have a Colombian flag painted on the side of a vessel. Why not check with Colombia? Because you cannot make two claims. And when he says, whatever value the painted flag has in their mind, that they've interpreted as Colombian, is immediately trumped the moment he says Ecuador. The master of the vessel makes the claim. And when he identifies the possible flag claim as Ecuadorian, that's it. It's either Ecuadorian or it's multiple claims, which would render him stateless. And the Coast Guard could stop right there. But that argument depends on your interpretation that a painted flag is not a flag. Because you told me earlier, if he was actually flying a flag and misidentified it, then that would be a different case. No, I don't think it does, Your Honor. Because whatever value the painted flag has, whether it counts or it doesn't count, in either case, it's trumped by the master's words. If he had said nothing, we would then have to be in two different situations of whether a painted flag counted. If it's flying, we've got a clear flying the flag claim. And then you'd have to decide whether his words trump the Coast Guard's subjective interpretation of what flag is flying. But in this case, whether the painted flag counted or whether the painted flag doesn't count, his words trumped whatever was in their subjective interpretation of which of two But that's true only if the painted flag was not flying a flag under the statute. If it was flying, then we'd have to decide whether his words identifying what flag it is trumped their interpretation of the flag. And you'd have different cases of whether it was an ambiguous flag like this, one many Central American flags. And the easy way to decide it is to say that painted flag's not flying. That is one quick way of answering it. Or this court could rule that just his words trump. In either case, he made no Colombian flag claim. And therefore, the Coast Guard acted appropriately in checking with the nation of Ecuador, which could not corroborate his claim. And an uncorroborated claim renders the vessel stateless under the MDLEA. And the vessel was properly determined to be within the jurisdiction of the United States. Thank you. The government should request that this case be referred to. Is there anything we ought to look at other than good, reputable dictionaries in determining what flying means? Is there anything that's peculiar to maritime practice, custom, what the shipping industry does, what navies do, that we ought to regard as especially authoritative? I don't think the court would have to. We have cited in the Convention of the High Seas that it discusses the words the Convention of the High Seas uses is flying the flag that a vessel is entitled to fly. We looked and cited in the government's brief various... That doesn't tell us anything, though. No. But the government cited in its brief other statutes where Congress has distinguished and has used the word flying in certain instances, displaying in others. And those are two different words that can refer to two different ways. Flying is one way to display a flag, but Congress has used different words in different situations. But I think that the court could, on a plain language of the statute, it's sufficient, I think, to resolve this case. Thank you, Your Honor. Thank you. Mr. Ravindran. Thank you, Your Honor. I'll pick up with the discussion of Article V of 1958 of the Convention of the Sea of Articles 5, 6, and 7 shows that in that document, the word sailing under the flag and flying the flag are used interchangeably. So I think that's the answer to your question about other documents or other sources that this court might consult. But to speak directly to the point the government made, the government's argument, I believe, is entirely foreclosed by what is stipulated already. And that stipulation is that Mr. Mara did not make a verbal claim of nationality. Thus, his misidentification of the Colombian flag as Ecuadorian, I believe, is of no moment given the agreements the parties have already made. A second point that I think bears mentioning, there is no principal reason why a flying flag should be materially different than a painted flag, especially as this case bears out. As you'll see, Your Honor, from the stipulation, the vessel that we're talking about is not a large sailboat with a mast such that a flag streaming from that mast would be visible from miles away. This was a small outboard twin-engine boat in the panga style, which appears from the stipulation to be about three feet high. So practically, there's no way that you could stream a flag such that that display would be any more noticeable. As far as the distinction between Canadian versus Colombian that came up in the government's presentation, what we have here is a situation where it was certainly known to the Coast Guard that the vessel on the flag was only of one country. This was not a case of confusion. Notwithstanding the fact that the Coast Guard had knowledge, they just simply opted not to contact the proper flag state. Do you have anything further, Mr. Bainter? No, Your Honor. I think that's actually about it. Okay. Well, thank you. We understand your case. It'll be under submission and we'll move to the next one. Thank you, Your Honor.